1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   David Eiseman (Bar No. 114758)
2  Brian E. Mack (Bar No. 275086)
   50 California Street, 22nd Floor
3  San Francisco, California 94111-4788
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700
   davideiseman@quinnemanuel.com
5  brianmack@quinnemanuel.com

6  William Odom (Bar No. 313428)
   865 S Figueroa Street, 10th Floor
7  Los Angeles, CA 90017-5003
   Telephone: (213) 443-3000
8  Facsimile: (213) 443-3100
   williamodom@quinnemanuel.com

9  *Attorneys for Petitioner Mitek Systems, Inc.*

10

11

12              **UNITED STATES DISTRICT COURT**
13      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

14

15 | IN RE: SUBPOENA TO MITEK SYSTEMS, INC. | Case No. 8:21-mc-00012
16 |                                        | **Related to Case No. 2:20-CV-00319-JRG**
17 |           *Petitioner,*                | *Pending in the United States District Court for the Eastern District of Texas*
18 |              v.                        |
19 | UNITED SERVICES AUTOMOBILE ASSOCIATION | **NOTICE OF MOTION AND MOTION TO QUASH USAA'S SUBPOENA, OR IN THE ALTERNATIVE, TRANSFER THE MOTION TO THE EASTERN DISTRICT OF TEXAS**
20 |                                        |
21 |           *Respondent.*                |
22 |                                        | Date:  TBD
23 |                                        | Time: TBD
   |                                        | Place: TBD
24 |                                        | Judge: TBD

25

26

27

28

NOTICE OF MOTION AND MOTION TO QUASH USAA'S SUBPOENA OR TRANSFER THE MOTION

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Petitioner/Movant Mitek Systems, Inc. ("Mitek") hereby moves the Court to quash United Services Automobile Association's ("USAA") subpoena *duces tecum* to Mitek, issued in the underlying *United Services Automobile Association v. PNC Bank N.A.*, No. 2:20-cv-00319-JRG (E.D. Tex.), or in the alternative, to transfer the motion to the Eastern District of Texas pursuant to Fed. R. Civ. P. 26 and 45.

This motion is made following the conference of counsel pursuant to L.R. 37-1 which took place on March 19, 2021.

This motion is based on this Notice of Motion and Motion to Quash USAA's Subpoena or, in the Alternative, Transfer the Motion ("Mitek's Motion"); the Memorandum in Support of Mitek's Motion; the concurrently-filed Declaration of William Odom, and exhibits thereto; the concurrently-lodged [Proposed] Order Granting Mitek's Motion; the files and records in this action; and any such additional argument or materials as maybe submitted to the Court before the time of the decision in this matter.

## RELIEF REQUESTED

Mitek respectfully requests that the Court quash or modify USAA's subpoena as identified in the Memorandum, or in the alternative, transfer Mitek's Motion to the Eastern District of Texas.

1

2  Dated:  March 22, 2021                    Respectfully submitted,

3                                            _____/s/ William Odom_____

4                                            David Eiseman (Bar No. 114758)
                                             Brian E. Mack (Bar No. 275086)
5                                            50 California Street, 22nd Floor
                                             San Francisco, California 94111-4788
6                                            Telephone: (415) 875-6600
                                             Facsimile: (415) 875-6700
7                                            davideiseman@quinnemanuel.com
                                             brianmack@quinnemanuel.com
8
                                             William Odom (Bar No. 313428)
9                                            865 S Figueroa Street, 10th Floor
                                             Los Angeles, CA 90017-5003
10                                           Telephone: (213) 443-3000
                                             Facsimile: (213) 443-3100
11                                           williamodom@quinnemanuel.com

12                                           Attorneys for Petitioner
                                             Mitek Systems, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    BACKGROUND ................................................................................. 3

II.   JURISDICTIONAL STATEMENT ................................................... 7

III.  LEGAL STANDARD ......................................................................... 7

IV.   ARGUMENT ....................................................................................... 8

    A.    Any Discovery of Mitek Should be Brought in the Earlier-Filed DJ Action, Not the PNC Action ..................................................... 9

    B.    USAA's Subpoena Should Be Quashed Because It Imposes An Undue Burden On Non-Party Mitek ........................................... 10

        1.    USAA's Improper Requests Seek Documents That Can Also Be Obtained From PNC, A Party To The Underlying Litigation .................................................................................. 10

        2.    USAA's Requests Are Facially Overbroad And Seek Irrelevant Documents Not Related To The Underlying Litigation .................................................................................. 11

        3.    USAA Is Improperly Seeking Privileged And Confidential Commercial And Proprietary Information From Its Competitor, Non-Party Mitek ................................................ 14

        4.    USAA Failed To Provide Non-Party Mitek With A Reasonable Time To Comply With Its Subpoena ..................... 16

    C.    In the Alternative, the Court Should Transfer The Motion to the Eastern District of Texas ........................................................... 16

V.    CONCLUSION ................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## Cases

*Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*,
  313 F.R.D. 39 (N.D. Tex. 2015)................................................................12

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014)........................................................7, 11

*Burns v. Bank of Am.*,
  No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437
  (S.D.N.Y. June 4, 2007) ...........................................................................11

*Convolve, Inc. v. Dell, Inc.*,
  No. C 10-80071 WHA, 2011 WL 1766486 (N.D. Cal. May 9, 2011)................11

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) .....................................................................7

*Duoline Techs., LLC v. Polymer Instrumentation*,
  No. 12-mc-61, 2012 WL 12871906 (W.D. Tex. Nov. 26, 2012),
  *modified on other grounds*, 557 Fed. App'x 379 (5th Cir. 2014)..........14, 15

*Duong v. Groundhog Enterprises, Inc.*,
  No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939 (C.D. Cal. Feb. 28,
  2020)........................................................................................................8, 13

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*,
  No. SA-MC-15-00022-DOCDFMX, 2015 WL 12746706 (C.D. Cal. Oct.
  23, 2015)..................................................................................................17

*Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*,
  No. 11-mc-036, 2011 WL 1348401 (N.D. Tex. April 8, 2011) ...............14

*Employbridge, LLC v. Riven Rock Staffing, LLC*,
  No. MC 16-142-GW (ASX), 2016 WL 10999329 (C.D. Cal. Dec. 5,
  2016) ........................................................................................................16

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993) ...................................................................7

*Helping Hand Caregivers Ltd. v. Darden Corp.*,
  No. MC 16-00011-BRO-RAO, 2016 WL 10987313 (C.D. Cal. Feb. 17,
  2016)........................................................................................................16

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) .............................................................9, 10

*Manookian v. Mervis*,
  No. 17-mc-56, 2017 WL 3457063 (E.D. Tex. Aug. 11, 2017) ...............14

*MAP Co. v. Lebanese Arak Corp.*,
  No. CV1605039ABRAOX, 2017 WL 10434017
  (C.D. Cal. Oct. 26, 2017)................................................................16

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
  894 F.2d 1318 (Fed. Cir. 1990) ..................................................15

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005)............................................11, 15

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007) ..............................................11

*Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*,
  No. 4:17-CV-00450, 2018 WL 5636160 (E.D. Tex. Oct. 30, 2018) ................13

*Saxon Innovations, LLC v. Nokia Corp.*,
  No. 6:07-cv-490, 2009 WL 10677277 (E.D. Tex. Oct. 30, 2009) ................15

*Schaaf v. SmithKline Beecham Corp.*,
  No. 06-120, 2006 WL 2246146 (M.D. Fla. Aug. 4, 2006) ......................8

*Scrum All. Inc. v. Scrum, Inc.*,
  No. 4:20-CV-00227, 2020 WL 6559625 (E.D. Tex. Nov. 9, 2020) ..........8, 11, 13

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006) ..................................................9

*UBS Sec. LLC v. Third Eye Cap. Corp.*,
  No. CV-143997-FMOMANX, 2014 WL 12613381
  (C.D. Cal. Oct. 21, 2014).........................................................17

*Union Carbide Corp. v. Filtrol Corp.*,
  278 F. Supp. 553 (C.D. Cal. 1967)..............................................15

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
  No. 2:13-cv-909-JRG, 2015 WL 123593 (E.D. Tex. Jan. 6, 2015) ..............10

*Verinata Health, Inc. v. Sequenom, Inc.*,
  No. 12-mc-00865, 2014 WL 2582097 (N.D. Cal. June 9, 2014)................14

*Whitlow v. Martin*,
  263 F.R.D. 507 (C.D. Ill. 2009)..................................................7

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 813 (5th Cir. 2004) ..............................................7, 14

**Statutes**

Fed. R. Civ. P. 26(b)(1) ..............................................................8

Fed. R. Civ. P. 26(b)(2)(C)(i) ......................................................8

Fed. R. Civ. P. 45(d)(2)(B)(ii) ......................................................2

-iii-

Fed. R. Civ. P. 45(d)(3) ................................................................8, 14

Fed. R. Civ. P. 45(d)(3)(A)(i) ............................................................2

Fed. R. Civ. P. 45(d)(3)(A)(iii)......................................................2, 15

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..........................................................2

Fed. R. Civ. P. 45(d)(3)(B)(i) .............................................................2

Fed. R. Civ. P. 45(f)...................................................................3, 7, 16

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

USAA is in the middle of a widespread patent enforcement campaign against the banking industry for alleged infringement of patents relating to the image-capture technology underlying mobile check deposit applications.  Mitek and USAA are embroiled in a dispute regarding the alleged infringement of several of those patents.  Mitek invented, and now licenses, a software product called MiSnap that thousands of banks and other types of financial institutions use.  USAA has sued or sent demands letters to a large number of Mitek's customers, so Mitek sued USAA for a declaratory judgment that Mitek's software does not infringe the relevant patents.  Case No. 2:20-cv-00115-JRG (E.D. Tex.) ("DJ Action").  Among substantial other reasons, Mitek needs such a judgment to avoid being subpoenaed into dozens of lawsuits.

Despite clear assurances to Judge Gilstrap, the judge presiding over the DJ Action, that Mitek should not fear future lawsuits or enforcement activity involving the patents-in-suit, USAA has brazenly sued yet another Mitek customer, PNC Bank, in the Eastern District of Texas for PNC's use of the same software provided by Mitek.  Case No. 2:20-cv-00319-JRG (E.D. Tex.) ("PNC Action").  At least two of the patents-in-suit in the PNC Action are the ***same two patents*** that were involved in a prior patent infringement suit brought by USAA against another Mitek customer, Wells Fargo.  This prior lawsuit against Wells Fargo precipitated Mitek's DJ Action, as well as its reasonable apprehension of imminent future litigation.

Directly contradicting assurances made to Judge Gilstrap during the DJ Action, USAA is now attempting to drag Mitek into another lawsuit—the PNC Action.  As Mitek articulated at the hearing before Judge Gilstrap in connection with USAA's motion to dismiss the DJ Action, Mitek filed its DJ Action against USAA in response to USAA's vexatious and serial litigation campaign against all of Mitek's customers. That DJ Action is still pending.

Rather than request Mitek's technical documents and source code in Mitek's DJ Action—where Mitek is a party—USAA instead chose to subpoena Mitek for

evidence of its infringement in the PNC Action.  Because discovery is properly obtained only in the earlier-filed DJ Action, which seeks to vindicate all of Mitek's customers of infringement of USAA's patents based on their use of Mitek's mobile check deposit software, the Court should quash USAA's subpoena in the PNC Action. Even if some limited discovery from Mitek is necessary and reasonable in the PNC Action, precautions[1] should be enforced to avoid use of that discovery in other actions involving the parties, such as the DJ Action.

This Court, as the jurisdiction embracing the place for compliance demanded in the subpoena, should also quash or modify USAA's subpoena under Fed. R. Civ. P. 45(d)(3) for several other reasons.  ***First***, the subpoena allows only 11 days after service to comply, which is objectively unreasonable.  Fed. R. Civ. P. 45(d)(3)(A)(i). In a recent meet and confer, counsel for USAA refused to extend the compliance deadline.  ***Second***, USAA's subpoena imposes an undue burden on non-party Mitek because it requests documents that are equally accessible to PNC, the defendant in the underlying litigation, and is impermissibly overbroad.   Fed. R. Civ. P. 45(d)(3)(A)(iv).   To the extent any discovery is warranted under the subpoena, reasonable cost shifting should be enforced to mitigate the expense associated with compliance.  Fed. R. Civ. P. 45(d)(2)(B)(ii).  ***Third***, the subpoena requests privileged communications and work product as well as highly confidential commercial and proprietary information that would put Mitek at a commercial disadvantage if disclosed to a competitor, such as USAA.   Fed. R. Civ. P. 45(d)(3)(A)(iii); 45(d)(3)(B)(i).

---

[1]   In view of the ongoing litigation between Mitek and USAA involving the same subject matter, the parties in the PNC Action should agree to a stipulated amendment of the Protective Order strictly prohibiting the use of any discovery from Mitek in other proceedings or against non-party Mitek or its customers (for example, to show direct or indirect infringement).

In the alternative, under Fed. R. Civ. P. 45(f), non-party Mitek **consents** to transferring the instant motion to quash to the Eastern District of Texas, the issuing court, where the underlying PNC Action and DJ Action are pending.[2]  Moreover, exceptional circumstances warrant transferring the instant motion to the Eastern District of Texas in the interest of judicial economy and reducing the risk of conflicting rulings given the Eastern District of Texas's deep familiarity with USAA's litigation campaign against Mitek and its customers, the asserted patents in the underlying litigation, Mitek's products, and Mitek's DJ Action, in which USAA made allegations in support of its request for dismissal.

## I.      BACKGROUND

USAA launched its extensive licensing campaign in early 2017, when it hired a law firm, Epicenter Law, PC, to send "over 1,000 patent licensing demand letters to financial [institutions] across the country, most of which are Mitek customers."  DJ Action, Dkt. 1, ¶¶ 8-10.  At least two of Mitek's customers, Wells Fargo Bank ("Wells Fargo") and PNC, were targets of USAA's licensing campaign.  In 2018, USAA initiated two separate litigations against Wells Fargo in the Eastern District of Texas alleging patent infringement.   Case No. 2:18-cv-00245-JRG (E.D. Tex.) ("WF1 Litigation"); Case No. 2:18-cv-00366-JRG (E.D. Tex.) ("WF2 Litigation").  Although Mitek was also not a defendant in either prior case against Wells Fargo, Mitek and its software were implicated as allegedly performing at least some of the limitations of the claims of the asserted patents.

Based on the cloud that USAA's enforcement campaign had cast over Mitek and its products, on November 1, 2019, Mitek initiated a declaratory judgment action against USAA in the Northern District of California, alleging non-infringement of the patents asserted in WF1 Litigation, including two patents USAA is currently asserting

---

[2]   Counsel for USAA advised that it does not oppose transfer of this motion to the Eastern District of Texas.  Declaration of William Odom, ¶ 3.

against PNC in the PNC Action, to protect itself and over 6,400 of its customers.  DJ Action, Dkt. 1 ¶¶ 2, 12, 14.  In its complaint, Mitek stated that it "has a real and substantial apprehension of imminent litigation between Mitek and USAA for direct infringement, inducement, and contributory infringement of the Patents-in-Suit" and that "Mitek's software and technology is directly implicated in the alleged infringement."  *Id.*, ¶¶ 12, 11.  USAA subsequently filed a motion to dismiss or transfer, in which it claimed that Mitek had no basis for perceiving an "imminent threat of litigation" by USAA against it or its customers.  *See, e.g.*, DJ Action, Dkt. 25-4 at 5.  Specifically, USAA argued that Mitek's apprehension of imminent litigation had "***no connection to reality***" and that it never communicated with Mitek or directed any "affirmative act of enforcement . . . concerning the Patents-in-Suit" to Mitek.  *Id.* at 1-2, 3 (emphasis added), 5, 7, 9.  USAA further argued that the DJ Action should be dismissed because "Mitek does not identify a single one of [its 6,400 customers] whose product has actually been accused of infringing the Patents-in-Suit."  *Id.* at 1.  Judge Chen of the Northern District of California granted USAA's motion to transfer without ruling on the motion to dismiss, finding that "transfer will facilitate at the very least coordination in that district" since "the Wells Fargo litigation involved the same exact patents at issue in the instant case and the issue of how Mitek's technology was used by a customer accused of infringement was explored in the Eastern District of Texas." *Id.*, Dkt. 45 at 9.  After Mitek's declaratory judgment action was transferred to the Eastern District of Texas, Judge Gilstrap held a hearing on USAA's motion to dismiss on July 15, 2020, and that motion remains pending.  Mitek has moved for leave to file a supplemental brief in support of its opposition to USAA's motion in light of USAA initiating litigation against PNC, another Mitek customer. *Id.*, Dkt. 59.

On September 30, 2020, USAA filed the PNC Action against PNC in the Eastern District of Texas, alleging that PNC infringes the '432 and '559 patents.  PNC Action, Dkt. 1, ¶ 13.  On March 11, 2021, USAA served a subpoena *duces tecum*

("Subpoena") on non-party Mitek and requested compliance by March 22, 2021 in Newport Beach, California.   Declaration of William Odom ("Odom Dec."), Ex. 1. USAA's Subpoena contains eight Requests for documents and information from non-party Mitek, seeking:

1. All source code relating to mobile remote deposit capture that Mitek has provided or licensed to PNC or NCR, including (without limitation) any code relating to the operation of mobile remote deposit capture on a user's device or a financial institution's server. ("Request No. 1")

2. All contracts, agreements, and licenses between Mitek and PNC or NCR relating to mobile remote deposit capture. ("Request No. 2")

3. All Documents relating to any Communications between Mitek, on the one hand, and PNC or NCR, on the other hand, related to USAA or any USAA patent. ("Request No. 3")

4. Documents sufficient to fully describe the operation of Mitek's mobile remote deposit capture product on a user's device, including:

    a. Automatic capture of a check image;
    b. Cropping of a check image;
    c. Criteria of a check image that are analyzed, including light contrast on the image, light brightness of the image, positioning of the image, dimensions, tolerances, character spacing, skewing, warping, corner detection, alignment, and MICR (magnetic ink character recognition) line detection;
    d. Threshold values used to analyze a check image;
    e. Feedback instructions instructing a user on actions to take based on analysis of a check image;
    f. Alignment instructions provided to a user;
    g. Presenting a check image to a user;
    h. Performing optical character recognition (OCR) on a check image;
    i. Modifying a check image captured by the mobile device;
    j. Encoding information with a check image;
    k. Encoding a check image as a JPEG;
    l. Interaction with a financial institution's mobile app;
    m. Interaction with the camera software on the mobile device;
    n. Transmission of check images to a server. ("Request No. 4")

5. Documents sufficient to fully describe the operation of Mitek's mobile remote deposit capture product on a financial institution's server, including:

> a. Criteria of a check image that are analyzed, including light contrast on the image, light brightness of the image, positioning of the image, dimensions, tolerances, character spacing, skewing, warping, corner detection, and MICR (magnetic ink character recognition) line detection, CAR/LAR amounts, and signature;
> b. Threshold values used to analyze a check image;
> c. Determining and/or converting image format;
> d. Performing optical character recognition (OCR) on a check image;
> e. Comparing the amount determined from a check image to an amount indicated by the user;
> f. Checking for errors;
> g. Determining whether a check was previously deposited and/or is suitable for creating a substitute check;
> h. Providing threshold values to the mobile device used to analyze a check image. ("Request No. 5")

6. All Documents relating to Mitek's indemnification of PNC and/or Mitek's assistance to PNC (or vice versa) in the USAA v. PNC Litigation or in any associated proceedings. ("Request No. 6")

7. All Documents relating to the value, cost savings, and performance impact of mobile remote deposit capture. ("Request No. 7")

8. All Documents relating to the value, cost savings, and performance impact of the autocapture feature for mobile remote deposit capture. ("Request No. 8")

*Id.* On March 8, 2021, PNC has also separately issued a subpoena on Mitek on the narrow issue of Mitek's potential prior art systems.

USAA's underlying litigation against PNC is still in its early stages. PNC just served its invalidity contentions on March 3, 2021, and fact discovery does not close until October 18, 2021. PNC Action, Dkt. 48.

## II.    JURISDICTIONAL STATEMENT

The Subpoena was issued by the United States District Court for the Eastern District of Texas and calls for production of documents to the office of issuing counsel in Newport Beach, California.  Pursuant to Federal Rule of Civil Procedure 45(d)(3), this Court is the court of compliance and has jurisdiction over non-party Mitek's motion to quash the Subpoena.  Accordingly, this Court has jurisdiction to decide this motion but may transfer this motion to the issuing court, *i.e.*, the Eastern District of Texas, under Federal Rule of Civil Procedure 45(f).  ***Petitioner Mitek consents to transfer*** of this motion to quash to the Eastern District of Texas.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3) governs motions to quash a subpoena. It states that the compliance court "must quash or modify a subpoena" that "fails to allow a reasonable time to comply," "subjects a person to undue burden," "requires disclosure of privileged or other protected matter," or "requires . . . disclosing a trade secret or other confidential research, development, or commercial information."  It is well-established that a non-party's status is a "significant factor" that is afforded "special weight" "against disclosure" when "determining whether the burden imposed by a subpoena is undue." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 813, 818 (5th Cir. 2004);[3] *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (finding no abuse of discretion in denying a motion to compel where discovery has

---

[3]   "To determine whether a subpoena presents an undue burden, courts consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818.

not first been sought from party opponent); *Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *1 (E.D. Tex. Nov. 9, 2020) ("Courts give special consideration to the burden posed when subpoenas are sent to nonparties."); *Schaaf v. SmithKline Beecham Corp.*, No. 06-120, 2006 WL 2246146, at *2 (M.D. Fla. Aug. 4, 2006) ("Courts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure."). Courts in this district have found that Rule 26—limiting discovery based on the burden and proportionality of the requests and whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"—applies to Rule 45 subpoenas. *See, e.g.*, *Duong v. Groundhog Enterprises, Inc.*, No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939, at *7 (C.D. Cal. Feb. 28, 2020) (collecting cases); Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C)(i).

In addition, Federal Rule of Civil Procedure 45(f) allows the compliance court to "transfer a motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." The 2013 Advisory Committee's notes for Rule 45(f) further advise that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."

## IV.   ARGUMENT

USAA's Subpoena on non-party Mitek is improper for multiple reasons, as it imposes an undue burden on Mitek, requires disclosure of Mitek's privileged and confidential commercial and proprietary information to its competitor USAA, and fails to provide a reasonable time for Mitek to comply with the Subpoena. *See* Fed. R. Civ. P. 45(d)(3). Moreover, while Mitek consents to transferring the instant motion to the issuing court, *i.e.*, the Eastern District of Texas, extraordinary circumstances also warrant transfer based on Judge Gilstrap's deep familiarity with USAA's

litigation campaign against Mitek and its customers, the patents-in-suit and technologies at issue (including Mitek's software), and the pending DJ Action between Mitek and USAA.

### A.   Any Discovery of Mitek Should be Brought in the Earlier-Filed DJ Action, Not the PNC Action

As discussed above, Mitek brought a DJ Action against USAA for non-infringement on November 1, 2019—**over 16 months ago**.  That case is still pending.  One of the purposes of the DJ Action is to vindicate Mitek and its software from all claims of infringement by USAA.  Another purpose is to vindicate all of Mitek's customers that use common elements of Mitek's software for mobile check deposit from claims of infringement.  *See generally* DJ Action, Dkt. 1 (all declaratory-judgment counts and prayer for relief on behalf of "Mitek and its customers").

Instead of a single, streamlined action that would resolve all common issues of direct or indirect infringement of Mitek's software at once, USAA would like to wage war using a vexatious, serial assault strategy against one bank at a time.  While USAA's litigation strategy might be USAA's preferred method to fill its own coffers and alienate the entire baking industry one bank at a time, it is not sustainable in view of Mitek's earlier-filed DJ Action designed to prevent such opportunistic and abusive litigation tactics.  As the Court of Appeals for the Federal Circuit has held numerous times, courts confronted with multiple patent infringement suits based on the same underlying technology should use as a guiding principle "efficiency and judicial economy," not wasteful and duplicative proceedings.  *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

In fact, in evaluating the consumer-suit exception (which applies to multiple overlapping suits involving a manufacturer and the manufacturer's consumers), "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).  "[T]he consumer-suit exception may still apply if 'additional

issues' are left unresolved by the second-filed action, the key is whether 'resolution of the major issues before [the] court, including patent infringement [and] patent validity…will resolve these issues as to [the] customers.'" *Vantage Point Tech., Inc. v. Amazon.com, Inc*., No. 2:13-cv-909-JRG, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015) (quoting *Katz*, 909 F.3d at 1464)).

Here, a declaratory judgment that the common software used to support USAA's allegations of infringement does not infringe would be dispositive of Mitek's non-infringement claims based on Mitek's software (although, of course, each Mitek customer may have additional reasons it does not infringe). The DJ Action is therefore the only action that should proceed. And infringement discovery[4] in the side-show PNC Action should be quashed, especially discovery from non-parties to that action.

### B.    USAA's Subpoena Should Be Quashed Because It Imposes An Undue Burden On Non-Party Mitek

The requests in USAA's Subpoena impose an undue burden on non-party Mitek, as they are facially overbroad and seek documents that are equally accessible from PNC, a party in the underlying litigation, or are untethered to the claims in the underlying litigation. To the extent any discovery is warranted, reasonable cost shifting should be enforced to reduce the burden on non-party Mitek.

#### 1.    USAA's Improper Requests Seek Documents That Can Also Be Obtained From PNC, A Party To The Underlying Litigation

Request Nos. 1-3 and 6-8 of the Subpoena impose an undue burden on non-party Mitek because they seek documents that are equally accessible from PNC, a party litigant from whom USAA can much "more easily and inexpensively" obtain the same documents. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D. Cal.

---

[4]    Mitek's DJ Action presently only seeks a declaratory judgment of non-infringement and not invalidity.

2005).  Each of these Requests either specifically identifies documents or information that Mitek has provided to PNC or are so broad that it would be equally burdensome for PNC as it would be for non-party Mitek to produce.

Courts in this district and other districts have quashed subpoenas that can "more easily and inexpensively" be obtained from the defendant in the underlying litigation. *Moon*, 232 F.R.D. at 637–38; *see also Amini Innovation*, 300 F.R.D. at 410 ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party" and "may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation") (internal citations omitted); *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2-3 (N.D. Cal. May 9, 2011) ("[N]on-parties should not be burdened in discovery to the same extent as the litigants themselves.  Requests to non-parties should be narrowly drawn to meet specific needs for information."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena where discovery was "obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants"); *Burns v. Bank of Am.*, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." (alterations in original) (citation and quotation marks omitted)).  Since USAA can seek the same documents from PNC or find the same documents itself, this Court should quash at least Request Nos. 1-3 and 6-8 in the Subpoena for these reasons.

### 2. USAA's Requests Are Facially Overbroad And Seek Irrelevant Documents Not Related To The Underlying Litigation

All eight of USAA's Requests are also overbroad on their face and further impose an undue burden on non-party Mitek.  As an initial matter, the Requests are not time-limited and therefore overbroad on this basis alone.  *See, e.g.*, *Scrum All.*,

2020 WL 6559625, at *2 (finding a subpoena where the plaintiff "did not limit the subpoena['s] requests to . . . time" to be "unduly burdensome"); *Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015) (determining that subpoenas are facially overbroad where the "[t]he period covered by the requests is unlimited").

In addition, all eight of the Requests are overbroad with respect to seeking documents that are either irrelevant or untethered to the claims in the underlying litigation. For example, Request No. 1 seeks "[a]ll source code relating to mobile remote deposit capture that Mitek has provided or licensed to PNC" without regard to whether that source code is actually implemented in PNC's accused product. It is difficult to comprehend how any source code that Mitek provided PNC that is not incorporated into PNC's accused product would be relevant in the PNC Action.

Request No. 2 seeks "[a]ll contracts, agreements, and licenses between Mitek and PNC . . . relating to mobile remote deposit capture" regardless of whether they relate to the subject matter of the underlying litigation. Given that one of Mitek's main businesses is mobile remote deposit capture, this request would arguably encompass any and all agreements Mitek has with PNC.

Request No. 3 seeks "[a]ll Documents relating to any Communications between Mitek . . . and PNC . . . related to USAA or any USAA patent," which encompasses subject matter that is not relevant to the underlying litigation, including USAA patents not asserted in the PNC Action or updates from Mitek to PNC regarding the 2012 lawsuits between Mitek and USAA. *See* DJ Action, Dkt. 1, ¶ 14.

Request Nos. 4 and 5, which request documents related to Mitek's "mobile remote deposit capture product on a user's device" and "on a financial institution's server," essentially ask Mitek for infringement evidence to be used against its customer, PNC, or against itself. Mitek's product, however, is not accused of infringement in the underlying litigation, and more importantly, if such evidence is to be produced, it should be produced in Mitek's pending declaratory judgment action

of non-infringement.  USAA's decision to serve a subpoena on Mitek in the underlying litigation, but not seek the documents from Mitek in Mitek's DJ Action, reeks of gamesmanship, especially since Mitek's declaratory judgment action was filed before USAA's lawsuit against PNC and motions to dismiss are pending in both cases.  In any event, given that neither of USAA's complaints in the PNC Action (PNC Action, Dkts. 1, 18) mention Mitek's products, much less with respect to the asserted claims of the patents-in-suit, Request Nos. 4 and 5 seek documents that are not relevant to USAA's claims in the underlying litigation.

Request No. 6 seeks "[a]ll Documents relating to Mitek's indemnification of PNC and/or Mitek's assistance to PNC (or vice versa) in the *USAA v. PNC* Litigation or in any associated proceedings," which is facially overbroad based on the terms "assistance" and "associated proceedings," among others, and would potentially encompass all the proceedings that USAA has initiated against Mitek and its customers.

And finally, Request Nos. 7 and 8 are generic requests for documents pertaining to the value and impact of "mobile remote deposit capture" and "autocapture feature" generally, documents which would equally burden USAA and non-party Mitek to obtain.

Courts have found that facially overbroad subpoenas "present[] an undue burden" on a non-party, especially when considering "the expense and inconvenience to the non-party."  *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, No. 4:17-CV-00450, 2018 WL 5636160, at *2 (E.D. Tex. Oct. 30, 2018); *see also Duong*, 2020 WL 2041939, at *8, *9 (determining that the issuing party "imposed an undue burden on [non-party] by unreasonably and in bad faith attempting to enforce his irrelevant and overbroad Subpoena"); *Scrum All.*, 2020 WL 6559625, at *1 ("Facially overbroad subpoenas include those that seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action" and where "[t]he requests are not particularized")

(internal citations omitted); *Wiwa*, 392 F.3d at 818 ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad"); *Manookian v. Mervis*, No. 17-mc-56, 2017 WL 3457063, at *1-2 (E.D. Tex. Aug. 11, 2017) (sustaining subpoenaed non-party's objections to overbroad document requests). Accordingly, this Court should quash USAA's Subpoena and its facially overbroad requests.

> ### 3. USAA Is Improperly Seeking Privileged And Confidential Commercial And Proprietary Information From Its Competitor, Non-Party Mitek

Fed. R. Civ. P. 45(d)(3) also provides that a court must quash a subpoena where it requires disclosure of a "trade secret or other confidential research, development, or commercial information." It is well established that "[d]isclosure [of privileged and confidential commercial and proprietary information] to a competitor is presumptively more harmful than to a non-competitor." *See, e.g.*, *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. 11-mc-036, 2011 WL 1348401, at *2 (N.D. Tex. April 8, 2011). This makes sense for two reasons: (1) disclosure of such sensitive and proprietary information "would damage [the non-party's] ability to compete in the marketplace"; and (2) the status of the non-party, by definition, renders the non-party 'unable to protect its interest should any of the confidential information be disclosed, even if done so pursuant to a protective order." *Id.* at *2-4; *see also Duoline Techs., LLC v. Polymer Instrumentation*, No. 12-mc-61, 2012 WL 12871906, at *5 (W.D. Tex. Nov. 26, 2012), *modified on other grounds*, 557 Fed. App'x 379 (5th Cir. 2014) (declining to compel production of "pricing quotations, purchase orders, invoices, cancelled checks for purchases, bills of lading . . . [and] commercial invoices" by a non-party to a direct competitor, finding that such information contained "confidential commercial information" and presented risk of competitive injury if disclosed, notwithstanding the presence of a protective order); *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-mc-00865, 2014 WL 2582097, at *2-3 (N.D. Cal. June 9, 2014) (quashing subpoena to a non-party that sought "highly sensitive

confidential information, including information related to . . . sales, marketing, pricing strategies, and its views on the market."); *Saxon Innovations, LLC v. Nokia Corp.*, No. 6:07-cv-490, 2009 WL 10677277, at *4 (E.D. Tex. Oct. 30, 2009) (concluding it was appropriate to quash a subpoena "seek[ing] the disclosure of confidential commercial information" despite the relevancy of the requested information).

Here, USAA is requesting non-party Mitek to produce not only contracts, agreements, and licenses with its customer, PNC, and NCR, another non-party,[5] but it is also seeking documents and source code related to "the operation of Mitek's mobile remote deposit capture product on a user's device" and "on a financial institution's server." *See* Odom Dec., Ex. 1 (Request Nos. 1-2, 4-5). It cannot be disputed that USAA has a product that competes with Mitek's product, MiSnap, and is a competitor to Mitek, as evidenced by USAA's litigation campaign against Mitek's customers. The documents USAA is now requesting in the PNC Action contain Mitek's confidential commercial and proprietary information that would put Mitek at a competitive disadvantage if revealed to the public or disclosed to a competitor such as USAA. *Duoline Techs.*, 2012 WL 12871906, at *5; *Saxon Innovations*, 2009 WL 10677277, at *4.[6] Moreover, at least Request Nos. 2, 3, and 6 seek documents that may be protected by attorney client privilege, work product doctrine, or common interest doctrine, which is prohibited under Fed. R. Civ. P. 45(d)(3)(A)(iii). Thus,

---

[5]   USAA's Request Nos. 1-3 seek documents related to non-party Mitek's relationship with NCR, another non-party, which alone is sufficient to quash the Subpoena. *Moon*, 232 F.R.D. at 638.

[6]   Moreover, Mitek's designation of its confidential commercial and proprietary documents as "confidential" under any protective order entered in the PNC Action "would not be controlling" and Mitek would "lose all control [of maintaining the confidentiality of its documents or limiting public disclosure] since disclosure of its information depends on the action by a court before whom it has no standing." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (citing *Union Carbide Corp. v. Filtrol Corp.*, 278 F. Supp. 553 (C.D. Cal. 1967)).

USAA's Subpoena should also be quashed for requesting Mitek's privileged and confidential commercial and proprietary information.

### 4. USAA Failed To Provide Non-Party Mitek With A Reasonable Time To Comply With Its Subpoena

USAA's Subpoena provides an unreasonable time for Mitek to comply and should therefore be quashed on this basis as well. USAA only effected service of the Subpoena on March 11, 2021 but demanded compliance by March 22, 2021. In accordance with Rule 45(d)(2)(B), Mitek was forced to file the instant motion within 11 days in order to preserve its rights to object to USAA's subpoena despite the overbroad nature of its Requests. Odom Dec., ¶ 3; *see also MAP Co. v. Lebanese Arak Corp.*, No. CV1605039ABRAOX, 2017 WL 10434017, at *5 (C.D. Cal. Oct. 26, 2017) (stating that eleven days did not provide the subpoenaed party with "a reasonable time to comply [given] the extensive nature of the document requests").

### C. In the Alternative, the Court Should Transfer The Motion to the Eastern District of Texas

Under Fed. R. Civ. P. 45(f), the Court should transfer non-party Mitek's motion to the Eastern District of Texas—not only because Mitek consents to the transfer, but also because exceptional circumstances based on judicial economy and efficiency warrant the transfer. Judge Gilstrap in the Eastern District of Texas has deep familiarity with the patents at issue, Mitek's software, Mitek's DJ Action, and USAA's litigation campaign against Mitek and its customers, including the PNC Action. The Eastern District of Texas's "interest in case management weighs heavily in favor of transfer," which would mitigate any risk of conflicting rulings or interference in the underlying litigation. *Employbridge, LLC v. Riven Rock Staffing, LLC*, No. MC 16-142-GW (ASX), 2016 WL 10999329, at *2 (C.D. Cal. Dec. 5, 2016) (finding exceptional circumstances); *Helping Hand Caregivers Ltd. v. Darden Corp.*, No. MC 16-00011-BRO-RAO, 2016 WL 10987313, at *2 (C.D. Cal. Feb. 17, 2016) (determining that subpoena-related motion would be "better decided by the court with

-16-

control over the disposition of the underlying case," especially since the issuing court "is also familiar with some [of] the topics listed in the subpoena[]"); *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SA-MC-15-00022-DOCDFMX, 2015 WL 12746706, at *4 (C.D. Cal. Oct. 23, 2015) ("[T]he interest of judicial economy weighs strongly in favor of transfer," as the judge in the issuing court "is in a better position to rule on [the movants'] petition to quash due to his familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation") (internal citations omitted); *UBS Sec. LLC v. Third Eye Cap. Corp.*, No. CV-143997-FMOMANX, 2014 WL 12613381, at *3 (C.D. Cal. Oct. 21, 2014) (finding that transfer to the issuing court "would avoid disruption of the [underlying] action and would decrease the risk of inconsistent results").

## V.   CONCLUSION

For the foregoing reasons, Mitek respectfully requests that the Court quash USAA's Subpoena, or in the alternative, transfer the instant motion to the Eastern District of Texas in accordance with Rule 45(f).

1    Dated:  March 22, 2021            Respectfully submitted,

2                                   */s/ William Odom*

3                                  David Eiseman (Bar No. 114758)
Brian E. Mack (Bar No. 275086)

4                                  50 California Street, 22nd Floor
San Francisco, California 94111-4788

5                                  Telephone: (415) 875-6600
Facsimile: (415) 875-6700

6                                  davideiseman@quinnemanuel.com
brianmack@quinnemanuel.com

7

8                                  William Odom (Bar No. 313428)
865 S Figueroa Street, 10th Floor

9                                  Los Angeles, CA 90017-5003
Telephone: (213) 443-3000

10                                Facsimile: (213) 443-3100
williamodom@quinnemanuel.com

11                                *Attorneys for Petitioner*
*Mitek Systems, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO QUASH USAA'S SUBPOENA OR TRANSFER THE MOTION

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543.

On March 22, 2021, I served true copies of the document(s) described as **NOTICE OF MOTION AND MOTION TO QUASH USAA'S SUBPOENA, OR IN THE ALTERNATIVE, TRANSFER THE MOTION TO THE EASTERN DISTRICT OF TEXAS**, as well as all supporting and case-initiating documents related thereto, on the interested parties in this action as follows:

**Ingrid Marie Haslund Petersen**
ipetersen@irell.com
**Lisa Sharrock Glasser**
lglasser@irell.com
**Rebecca L. Carson**
rcarson@irell.com
**Stephen M Payne**
spayne@irell.com
IRELL & MANELLA - NEWPORT BEACH
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Attorneys for United Services Automobile Association*

**Jason G Sheasby**
jsheasby@irell.com
IRELL & MANELLA LLP - LOS ANGELES
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

**Robert Christopher Bunt**
rcbunt@pbatyler.com
PARKER BUNT & AINSWORTH
100 E Ferguson, Suite 418
Tyler, TX 75702
Telephone: (903) 531-3535

*Attorneys for United Services Automobile Association*

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on the agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address williamodom@quinnemanuel.com to the persons at the e-mail addresses listed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a member of the bar of this Court.

Executed on March 22, 2021, at Los Angeles, California.

_____
/s/ *William Odom*
William Odom